UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Qudian Inc. Securities Litigation | Master File No.: 1:17-cv-09741-JMF |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
<u>**MOTION FOR RECONSIDERATION**</u>

# **TABLE OF CONTENTS**

        **Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.     PLAINTIFFS FAIL TO MEET THE EXCEPTIONALLY HIGH BAR FOR RECONSIDERATION. ................................................................................................2

II.    PLAINTIFFS IDENTIFY NO ERROR IN THE COURT'S DECISION, MUCH LESS "CLEAR ERROR." ..............................................................................................6

        A.    Qudian Exhaustively Disclosed Potential Flaws in Its Data Security Protocols. ........................................................................................................6

              1.    *Jinkosolar* Involved Very Different Disclosures and Allegations. ..............8

              2.    Qudian Disclosed That Its Data Security Protocols Were the Subject of Regulatory Review. ..................................................................11

              3.    Plaintiffs' Recycled Arguments Regarding *Heartland* Are Wrong...........12

        B.    Plaintiffs' Allegations All Concern an Earlier Iteration of Qudian's Data Security Systems. ....................................................................................13

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
    No. 03-MD-1529 (JMF), 2015 WL 268846 (S.D.N.Y. Jan. 21, 2015) .......................... 3, 5

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012).................................................................................................. 2, 3

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    847 F. Supp. 2d 624 (S.D.N.Y. 2012)................................................................................ 10

*In re American International Group, Inc. 2008 Securities Litigation*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010)................................................................................ 10

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)............................................................................ 4, 10

*In re Francesca's Holdings Corp. Securities Litigation*,
    Nos. 13-cv-6882 (RJS), 13-cv-7804 (RJS),
    2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ................................................................... 13

*In re Heartland Payment Systems, Inc. Securities Litigation*,
    No. 09-1043, 2009 WL 4798148 (D.N.J. Dec. 7, 2009)............................... 5, 7, 10, 12, 13

*Medisim Ltd. v. BestMed LLC*,
    No. 10 Civ. 2463 (SAS), 2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012).......................... 2

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)................................................................................. 4, 7, 8, 9

*Scott v. General Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014)................................................................................... 9

*SOHC, Inc. v. Zentis Food Solutions North America, LLC*,
    No. 14-CV-2270 (JMF), 2014 WL 6603951 (S.D.N.Y. Nov. 20, 2014)....................... 3, 5

**Rules**

Fed. R. Civ. P. 59(e) ................................................................................................................. 2

Local Civil Rule 6.3 .................................................................................................................. 2

Defendants[1] hereby respectfully submit this memorandum in opposition to Plaintiffs' partial motion for reconsideration of this Court's September 27, 2019 Order. *See generally* Dkt. 187 (the "Order").

## INTRODUCTION

As this Court correctly held, Qudian's IPO disclosures concerning data security were not misleading. The IPO offering materials included exhaustive warnings concerning the Company's vulnerability to data breaches, cautioning that its systems "were far from perfect, might not comply with applicable laws, and might have been breached in the past." *See* Order at 15. As a result, "it cannot be said that Plaintiffs plausibly identify a material misrepresentation with respect to Qudian's statements concerning its data security protocols." *Id.* at 16. Plaintiffs' "motion for reconsideration" identifies no new facts, no new law, and no other reason to revisit the Court's well-founded decision to dismiss the Complaint's data-breach allegations.

**Plaintiffs' motion simply repeats the same arguments set out at length in their opposition brief**. Plaintiffs' motion is procedurally improper because it does not offer anything new. They do not point to *any* intervening change in controlling law, new evidence, or, for that matter, anything the Court failed to consider, much less any "clear error" by the Court. Instead, Plaintiffs recycle the same arguments—in some cases nearly verbatim—and case law that they previously raised and that this Court previously considered. This cannot clear the high bar required for reconsideration.

---

[1] "Defendants" refers to Defendants Qudian Inc., Qufenqi Holding Limited, Diana Arias, Morgan Stanley & Co. International plc, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., China International Capital Corporation Hong Kong Securities Limited, UBS Securities LLC, Stifel, Nicolaus and Company, Incorporated, Needham & Company, LLC, and Nomura Securities International, Inc.

**This Court's decision was unquestionably correct**.  Plaintiffs identify no error in the Court's decision, much less "clear error."  The Court's Order quoted pages of disclosures from the IPO Registration Statement in which Qudian unambiguously explained that, among other things: "our security measures could be breached"; "we may be unable to anticipate these techniques or to implement adequate preventative measures"; "[i]t is not always possible to identify and deter misconduct or errors by employees"; and even that Qudian "**cannot assure [investors] that [its system] will be considered sufficient under applicable laws and regulations**."  *Id.* at 15 (emphasis added).  Under these circumstances, no reasonable investor could have been misled about the vulnerability of Qudian's systems.

Finally, while the Court was not even required to reach this issue, Plaintiffs' data-breach allegations were also appropriately dismissed because they concerned a purported data breach under a predecessor data security system that *Qudian no longer used when the IPO occurred*.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO MEET THE EXCEPTIONALLY HIGH BAR FOR RECONSIDERATION.

Plaintiffs' motion does not come close to satisfying the stringent reconsideration standard.  As Plaintiffs recognize, Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3 govern here.  Mot. at 2.  Those provisions are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012).  Reconsideration thus "is not a vehicle for relitigating old issues."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

The recognized bases for reconsideration are narrow.  "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or

the need to correct a clear error or prevent manifest injustice." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (Furman, J.). Reconsideration will "generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc.*, 684 F.3d at 52. As this Court has succinctly put it, "[i]t is well established that the rules permitting motions for reconsideration must be **narrowly construed** and **<u>strictly applied</u>** so as to avoid repetitive arguments on issues that have been considered fully by the Court." *SOHC*, 2014 WL 6603951, at *1 (emphasis added).

For example, in *SOHC*, this Court addressed a motion for reconsideration of its decision granting a motion to compel arbitration. The moving party argued (among other things) that the Court "should not have relied on" a "factually distinguishable" out-of-circuit decision. *Id.* at *2. Rejecting this argument, the Court noted that its Order had "expressly considered" this issue, explaining, "'[i]t is well established that 'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits or otherwise taking a second bite at the apple' . . . . Because that is exactly what Defendant is seeking to do here, the motion for reconsideration is DENIED." *Id.* (quoting *Analytical Surveys*, 684 F.3d at 52); *accord, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MD-1529 (JMF), 2015 WL 268846, at *1 (S.D.N.Y. Jan. 21, 2015) (Furman, J.) (denying reconsideration where "Plaintiffs . . . reiterate arguments that were made and considered by the Court").

Here, Plaintiffs' suggestion that this Court overlooked any of Plaintiffs' arguments or authorities, such as *Jinkosolar* and *Heartland*, is simply incorrect. Indeed, Plaintiffs identify *no* fact, issue, or case that was not before the Court on the motion to dismiss. Even a cursory

3

comparison to Plaintiffs' original opposition brief shows that Plaintiffs offer nothing new here (bold emphasis added):

| **Plaintiffs' Motion for Reconsideration** | **Plaintiffs' Opposition to Motion to Dismiss ("Opp.") [Dkt. 157]** |
|---|---|
| "The Registration Statement's generic risk warnings are materially misleading because Defendants **failed to disclose that Qudian had *already* experienced a massive data breach in early 2017**, [with] . . . personal information leaked into the black market." Mot. at 1. | "[T]he Registration Statement **failed to disclose that Qudian had *already* experienced a massive data breach in early 2017**, [where] . . . personal information was leaked into the black market." Opp. at 12-13. |
| "**[H]ere, Defendants' statements regarding cybersecurity were materially misleading** because they failed to disclose that Qudian had already experienced a breach in early 2017 . . . ." Mot. at 3 (citing ***Jinkosolar*, 761 F.3d at 251**). | "**Here, Defendants' statements touting Qudian's cybersecurity** and its efforts to protect consumer data **left investors with [a] misleading impression** . . . when, in truth, the Company's cybersecurity had failed in the very recent past . . . ." Opp. at 13-14 (citing ***Jinkosolar*, 761 F.3d at 251**). |
| "**Defendants cobble a disclosure together** from different sections of the Registration Statement . . . . which is both highly artificial and ineffective . . . ." Mot. at 5. | "**Defendants' other supposed 'warnings,' cobbled together** from the 'Risk Factors' and the 'Regulations' sections of the Registration Statement, were equally inadequate and meaningless . . . ." Opp. at 14 n.12. |
| "Numerous other opinions in this Circuit support the conclusion that Defendants' failure to disclose the 2017 breach and ongoing issues related thereto was materially misleading. *E.g.*, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, **986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013)** (. . . Facebook's registration statement did not disclose that increased mobile usage and the company's product decisions had already had a negative impact . . .)." Mot. at 6 n.5. | "Defendants' claim . . . . suffers from the same fundamental flaw—the risk warned of had already materialized. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, **986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013)** (collecting cases . . .)." Opp. at 14. |

4

| **Plaintiffs' Motion for Reconsideration** | **Plaintiffs' Opposition to Motion to Dismiss ("Opp.") [Dkt. 157]** |
|---|---|
| "*In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *5 (D.N.J. Dec. 7, 2009), cited by Defendants and relied upon in the Order (2019 WL 4735376 at *8), is inapposite. . . . The *Heartland* court concluded that 'the cautionary statements in the Form 10–K . . . make clear that Heartland was not claiming that its security system was invulnerable.' *Hartland* [sic], 2009 WL 4798148 at *5." Mot. at 6. | "**Defendants rely heavily on *In re Heartland Payment Systems, Inc. Sec. Litig.*, 2009 WL 4798148 (D.N.J. Dec. 7, 2009)**. However, the *Heartland* court never held that the company's statements, for example, that it 'place[s] significant emphasis on maintaining a high level of security,' were immaterial. Instead, the court held that the plaintiffs had simply failed to advance particularized facts demonstrating that Heartland 'did not make serious efforts to protect its computer network from security breaches.' 2009 WL 4798148 at *5." Opp. at 14 n.11. |

In fact, the centerpiece of this motion—that Qudian's disclosures were misleading because a data breach reported after Qudian's IPO had allegedly already occurred, *see* Mot. at 2—was the entire *premise* of Plaintiffs' prior opposition brief on this issue. *See, e.g.*, Opp. at 2 ("Qudian, however, failed to disclose that as a result of the Company's lax security measures, it had already been the victim of a data breach . . . ."); *id.* at 12-13 (alleging that "the Registration Statement failed to disclose that Qudian had already experienced a massive data breach") (emphasis omitted); *id.* at 13 ("[T]he Company's cybersecurity had failed in the very recent past to prevent a substantial data breach."). Under these circumstances, Plaintiffs' recycling of this argument is improper, and the motion should be denied for this reason alone. *See, e.g.*, *SOHC*, 2014 WL 6603951, at *2 (denying reconsideration where motion relied on same case law and argument court had already expressly considered); *Adelphia*, 2015 WL 268846, at *1 (denying reconsideration where "Plaintiffs . . . reiterate arguments that were made and considered by the Court").

5

## II. PLAINTIFFS IDENTIFY NO ERROR IN THE COURT'S DECISION, MUCH LESS "CLEAR ERROR."

Plaintiffs fare no better with their argument that this Court committed "clear error" in concluding that Qudian adequately disclosed its vulnerability to a data breach. To the contrary, the Court's decision was well-founded and based on the plain language of Qudian's disclosures.

### A. Qudian Exhaustively Disclosed Potential Flaws in Its Data Security Protocols.

As this Court properly concluded in its Order, Qudian unambiguously highlighted vulnerabilities in its security systems. Indeed, as the Court noted, Qudian's disclosures expressly warned that "the company's security systems were far from perfect, might not comply with applicable laws, and might have been breached in the past." Order at 15. The Court then excerpted at length Qudian's unequivocal disclosures that its system defenses were not impregnable and could be—or, indeed, might already have been—breached:

- "While we have taken steps to protect the confidential information that we have access to, *our security measures could be breached*." *Id.* (Court's emphasis).

- "Because techniques used to sabotage or obtain unauthorized access to systems change frequently and generally are not recognized until they are launched against a target, *we may be unable to anticipate these techniques or to implement adequate preventative measures*." *Id.* (Court's emphasis).

- "If security measures are breached because of third-party action, employee error, malfeasance or otherwise, or if design flaws in our technology infrastructure are exposed and exploited, our relationships with users could be severely damaged, *we could incur significant liability and our business and operations could be adversely affected*." *Id.* (Court's emphasis).

- "[Qudian] cannot assure you that our existing user information protection system and technical measures *will be considered sufficient under applicable laws and regulations*." *Id.* (Court's emphasis).

The Court likewise correctly noted that Qudian disclosed "it was under examination at the time of the IPO for potential violations of regulations that required 'keeping proper custody of the

6

data and transaction information of . . . borrowers' and that '*there can be no assurance* that [the Company] will be able to receive . . . final clearance.'" *Id.* (citations omitted).

Under these circumstances, no reasonable investor could have believed that Qudian's systems were invulnerable to breach or that Qudian was claiming that no breach had already occurred. *See generally* Defendants' Motion to Dismiss [Dkt. 142] at 22-24; Defendants' Reply Brief [Dkt. 165] at 14-15. Indeed, as discussed in greater detail below, the Court further noted Qudian's express disclosure that "*[i]t is not always possible to identify* and deter misconduct or errors by employees or business partners," Order at 16 (emphasis added), including specifically with respect to whether "personal information was disclosed to unintended recipients . . . whether as a result of human error, purposeful sabotage or fraudulent manipulation of our operations or systems." Registration Statement at 46. Qudian certainly "did not make any statements to the effect that the company's network was immune from security breaches or that no security breach had ever occurred." *In re Heartland Payment Sys., Inc. Sec. Litig.*, No. 09-1043, 2009 WL 4798148, at *6 (D.N.J. Dec. 7, 2009). Qudian told investors precisely the opposite—that a breach could occur, or could already have occurred, and might not be immediately identified.

\* \* \*

Plaintiffs contest none of this. Instead, relying primarily on *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), Plaintiffs repeat the argument from their original opposition brief that "[a] company's risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized." Mot. at 2. These recycled arguments easily fail.

7

1. ***Jinkosolar* Involved Very Different Disclosures and Allegations.**

*First*, as in their earlier opposition to Qudian's motion to dismiss, Plaintiffs argue principally that the court in *Jinkosolar* found "failure to disclose then-ongoing and serious pollution violations would cause a reasonable investor to make an overly optimistic assessment of the risk," Mot. at 3, and assert by analogy here that "Defendants' statements regarding cybersecurity were materially misleading because they failed to disclose that Qudian had already experienced a breach in early 2017." *Id.* (emphasis omitted).

But *Jinkosolar* is readily distinguishable. There, the issuer's disclosure specifically touted its pollution control protocols *and assured investors that the company complied with law*:

- "We also maintain environmental teams at each of our manufacturing facilities to monitor waste treatment **and ensure that [these] waste emissions comply with [China] environmental standards**";

- "We have installed pollution abatement equipment at our facilities to process, reduce, treat, and where feasible, recycle the waste materials before disposal, and we treat the waste water, gaseous and liquid waste and other industrial waste produced during the manufacturing process before discharge";

- "Our environmental teams are on duty 24 hours";

- "**We are required to comply with all PRC national and local environmental protection laws and regulations** . . . . As of December 31, 2009, no [regulatory] penalties had been imposed on us."

*Jinkosolar*, 761 F.3d at 247-48 (emphasis added and omitted) (first alteration in original).

Moreover, it was evident in *Jinkosolar* that, at the same time it was touting compliance, the company knew its pollution-control measures were ineffective—*the company had disclosed to regulatory authorities an existing severe environmental issue* between its May and November offerings. *Id.* at 248. Under those circumstances, the court found that "the description of pollution-preventing equipment and 24–hour monitoring teams gave comfort to

8

investors" and that "investors would be misled . . . if in fact the equipment and 24–hour team were then failing to prevent substantial violations of the Chinese regulations," particularly where the company itself had reported to the government—just after the May offering—that significant environmental issues existed.  *Id.* at 251.

This case could not be more different.  Here, Qudian never reassured investors that its data-security protocols were effective.  To the contrary, the offering materials expressly and repeatedly noted potential deficiencies in its systems and warned investors that those systems ***might be in violation of law***, Order at 15—the exact opposite of the representations in *Jinkosolar*.  *Cf. Jinkosolar*, 761 F.3d at 247-48 (relying on disclosures that the company had taken steps to "***ensure*** that [these] waste emissions comply with . . . environmental standards" and that no penalties for violations of any such provisions had been imposed) (emphasis added).

Moreover, in stark contrast to *Jinkosolar*, there is no allegation here—not even a conclusory one—that Qudian knew of any alleged data breach.  *See generally* Defendants' Motion to Dismiss at 27; Second Amended Complaint ("SAC") ¶¶ 110-19 (no allegation that Qudian even knew of alleged breach).  In fact, the Complaint expressly disclaims any allegation that Defendants knew their statements were false.  *See* SAC ¶ 148 ("Plaintiffs ***specifically disclaim*** any allegations that are based upon fraud . . . .") (emphasis added)).  Under these circumstances, the offering materials' statements concerning Qudian's data-security protocols are not misleading.  *See, e.g.*, *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 393-94 (S.D.N.Y. 2014) ("The relevant inquiry is not whether . . . the statement later turned out to be correct, but

rather whether the defendant knew or had reason to know, at the time the offering documents were filed, that the statement was untrue.").[2]

In a last-ditch effort to resurrect their claim, Plaintiffs misread Qudian's clear and repeated warning that a data breach "could" happen as an assurance that no breach ever had. *See* Mot. at 4.  But the law is to the contrary—disclosures that a data breach "could" occur necessarily embrace the possibility that one had already occurred.  *See, e.g.*, *Heartland*, 2009 WL 4798148, at *6 (explaining that substantially similar disclosures "did not imply that Heartland had never experienced any security problems").

But if those disclosures left any doubt, Qudian's offering materials expressly warned that it is "not always possible to *identify* and deter misconduct or errors by employees," including expressly with respect to whether "personal information was disclosed to unintended recipients" and "misuse" of "data."  Registration Statement at 46-47 (emphasis added).  Given that the alleged breach here was an employee leak, the offering materials thus explicitly informed investors that Qudian may not have been able to "identify" (and hence disclose) precisely this type of employee misconduct—even if it had already occurred.  *See, e.g.*, SAC ¶ 112 ("Qudian insiders directly downloaded [the data], rather than hackers hacking into Qudian's system."); *id.* ¶ 113 ("[L]ower level employees could access and download client data at their level without

---

[2] The other cases Plaintiffs cite for this proposition—that the offering materials' data-breach warnings are actionable because a breach had already occurred—are inapposite for the same reason: the defendants in those cases *knew* about the allegedly undisclosed facts.  *Cf. In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 508 & n.22 (S.D.N.Y. 2013) ("Plaintiffs posit that the loss of revenues caused by the increasing mobile usage was a trend *known* by Facebook . . . .") (emphasis added); *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 647 (S.D.N.Y. 2012) (allegation that "Defendants *were aware* of a buildup of negative events in the subprime mortgage market, and *knew* the outlook for subprime-mortgage related assets was gloomy") (emphasis added); *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) ("[G]eneric risk disclosures are inadequate to shield defendants from liability for failing to disclose *known* specific risks.") (emphasis added).

10

authorization."); *id.* ¶ 114 ("[D]isgruntled former employees were responsible for the data breach."). No reasonable investor could have been misled under these circumstances.

### 2. Qudian Disclosed That Its Data Security Protocols Were the Subject of Regulatory Review.

*Second*, Plaintiffs criticize the Court's finding that "Qudian shared that it was under examination at the time of the IPO for potential violations of regulations that required 'keeping proper custody of the data and transaction information of . . . borrowers' and that '*there can be no assurance* that [the Company] will be able to receive . . . final clearance.'" Order at 15 (quoting Registration Statement at 33, 192) (Court's emphasis) (alterations in original). Again repeating an argument almost verbatim from its opposition brief, Plaintiffs assert that Qudian "cobbled together" disclosures that were separated by "159 pages" in the IPO Registration Statement and that, in any event, these portions of the Registration Statement did not "contain a disclosure of the 2017 data breach." Opp. at 14 n.12; Mot. at 5.

Plaintiffs' recycled attack on these disclosures again misses the point. As explained above, Qudian clearly disclosed potential deficiencies in its data security systems and that those systems might even be *unlawful*. *See supra* Part II.A. It is also undisputed that Qudian told investors it was under examination in connection with the applicable regulations, which expressly encompassed "keeping proper custody of the data and transaction information of lenders and borrowers." Registration Statement at 192. And investors were not required to span 159 pages to connect the Chinese government examination with the data-breach risk Qudian disclosed elsewhere, because the offering materials explained *immediately* after the discussion of these regulations that Qudian's "*current business practice may be considered to be not in compliance with [the regulations]*, and accordingly, our business, results of operations and financial position will be materially and adversely affected." *Id.* at 194 (emphasis added). When

read in conjunction with the voluminous other disclosures cited by the Court, Qudian clearly informed investors that it might not be in compliance with applicable law concerning, and faced risks relating to, its data security.

### 3. Plaintiffs' Recycled Arguments Regarding *Heartland* Are Wrong.

***Third***, Plaintiffs also repeat their attempt to distinguish *Heartland*, *supra*, on the grounds that "the cautionary statements in the Form 10–K—warning of the possibility of a breach and the consequences of such a breach—make clear that Heartland was not claiming that its security system was invulnerable." Mot. at 6. And Plaintiffs argue yet again that "the issue here is not whether Qudian's security systems were actually perfect and legally compliant, but whether it was misleading for Defendants to advise investors that a significant data breach could be possible when, in fact, a data breach had already occurred and the consequences were ongoing." *Id.* (emphasis omitted).

Despite Plaintiffs' repetition, this attempted distinction remains baseless. The Court rejected this exact argument in its Order, holding instead that *Heartland* "dismiss[ed] similar claims on the ground that 'there is nothing inconsistent between Defendants' statements' that the company "place[d] significant emphasis on maintaining a high level of security" ***and the fact that the company had suffered an . . . attack***.'" Order at 16 (emphasis added). Indeed, the *Heartland* disclosures painted a far rosier picture of the company's data security, representing to investors that Heartland "'place[d] significant emphasis on maintaining a high level of security' and maintained a network configuration that 'provide[d] multiple layers of security to isolate [its] databases from unauthorized access.'" *Heartland*, 2009 WL 4798148, at *5. The court there nonetheless concluded that "the [disclosures] did not make any statements to the effect that the company's network was immune from security breaches or that no security breach had ever occurred" and that "[i]t is equally plausible that Heartland did place a high emphasis on security

12

but that the Company's security systems were nonetheless overcome." *Id.* at *5-6. For the same reasons that have already been briefed at length and that the Court has already adopted in its Order, *Heartland* is squarely on point and supports the Court's holding here.

### B. Plaintiffs' Allegations All Concern an Earlier Iteration of Qudian's Data Security Systems.

*Finally*, while the Court did not even need to reach this issue to dismiss Plaintiffs' claim, Plaintiffs' allegations also fail for the separate and independent reason that none of them alleges any defects in Qudian's security protocols that were in place at the time of the IPO. *See* Defendants' Reply at 16. As Qudian previously explained in detail, the newspaper articles and confidential witness allegations on which Plaintiffs rely uniformly describe alleged issues that arose *prior* to a significant upgrade of Qudian's security protocols. *See, e.g.*, SAC ¶ 113 (Qudian's legacy system prior to 2015); *id.* ¶ 114 (Qudian's system prior to 2016); *id.* ¶ 119 ("[F]or a time Qudian handled client intake *on paper* . . . .") (emphasis added); *see also* Defendants' Reply at 16 (newspaper article alleged thefts by employees in the "early stage[s]" of the company).

Because the IPO Registration Statement itself disclosed a "major upgrade" to the company's systems in January 2017, *see* Defendants' Reply at 16 (quoting Registration Statement at 160), Plaintiffs' allegations regarding an earlier system by definition cannot plead that Qudian's—still circumspect—disclosures about a different security system in place in October 2017 were somehow misleading. *See, e.g.*, *In re Francesca's Holdings Corp. Sec. Litig.*, Nos. 13-cv-6882 (RJS), 13-cv-7804 (RJS), 2015 WL 1600464, at *13-14 (S.D.N.Y. Mar. 31, 2015) (holding that it was "certainly not enough to allege that the Company's statements were false *when made*," where vague CW allegations involved irrelevant time period) (emphasis added).

13

Thus, even if Plaintiffs' motion for reconsideration had any basis (and it does not), this provides a further, independent ground on which the Court should reaffirm its prior decision.

## **CONCLUSION**

For all of the reasons set forth above and in Defendants' opening and reply briefs in support of their motion to dismiss, Defendants respectfully request that the Court deny Plaintiffs' motion for reconsideration.

Dated: December 6, 2019

SIMPSON THACHER & BARTLETT LLP

By: */s/ Stephen P. Blake*
    Stephen P. Blake

    James G. Kreissman (jkreissman@stblaw.com)
    Stephen P. Blake (sblake@stblaw.com)
    Bryan Bo Jin (bjin@stblaw.com)
    425 Lexington Avenue
    New York, NY 10017
    Telephone: (212) 455-2000
    Facsimile: (212) 455-2502

*Counsel for Defendant Qudian Inc., Qufenqi Holding Limited, Diana Arias, Phoenix Auspicious FinTech Investment L.P., Wa Sung Investment Limited, Joyful Bliss Limited, and Ever Bliss Fund L.P.*

O'MELVENY & MYERS LLP

By: */s/ Jonathan Rosenberg*
    Jonathan Rosenberg

    Jonathan Rosenberg (jrosenberg@omm.com)
    William J. Sushon (wsushon@omm.com)
    7 Times Square
    New York, New York 10036
    Telephone: (212) 326-2000
    Facsimile: (212) 326-2061

*Counsel for Morgan Stanley & Co. International plc, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., China International Capital Corporation Hong Kong Securities Limited, UBS Securities LLC, Stifel, Nicolaus and Company, Incorporated, Needham & Company, LLC, and Nomura Securities International, Inc.*