UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

IN RE:                                                 :           17-CV-9741 (JMF)
                                                   :
QUDIAN INC. SECURITIES LITIGATION     :           MEMORANDUM OPINION
                                                   :                 AND ORDER
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs in this putative class action move for partial reconsideration of the Court's September 27, 2019 Opinion and Order, which dismissed most of Plaintiffs' securities fraud claims brought under the Securities Act of 1933. *See In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741 (JMF), 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) (ECF No. 187); *see also* ECF No. 193 ("Pls.' Motion"). In particular, Plaintiffs attempt to revive claims relating to statements by Qudian, Inc. regarding its data security protocols. More specifically, they argue that the Registration Statement submitted in advance of Qudian's October 18, 2017 initial public offering ("IPO") — which contained various statements touting the company's information security systems, *see* ECF No. 134 ("SAC") ¶¶ 77, 116 — was materially misleading because Defendants failed to disclose "that Qudian had *already* experienced a massive data breach in early 2017" and that the "negative consequences of th[e] breach were ongoing at the time" of the company's IPO. ECF No. 194 ("Pls.' Mem."), at 1, 3 (emphasis omitted).

       The standards governing motions for reconsideration under Rule 59(e) and Local Rule 6.3 are the same and are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). Significantly, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (ellipsis and internal quotation marks omitted). Instead, the primary grounds justifying reconsideration are an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Terra Sec. ASA Konkursbo v. Citigroup, Inc*., 820 F. Supp. 2d 558, 560 (S.D.N.Y.2 011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). That is, reconsideration will generally be denied unless "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks omitted). Ultimately, "a district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

Applying these standards, the Court concludes that Plaintiffs' motion is without merit. Plaintiffs' principal argument — that the Court overlooked *Meyer v. JinkoSolar Holdings Co*., 761 F.3d 245, 251 (2d Cir. 2014), in dismissing their data breach claims — is nothing more than a veiled effort to relitigate an argument that was raised and rejected in the first instance. In their opposition to Defendants' motion to dismiss, Plaintiffs cited *JinkoSolar* for the proposition that "an issuer's statements misleadingly touting the strength, quality, or character of an important business practice or program are actionable." ECF No. 160 ("Pls.' Opp'n"), at 11 (citing

2

*JinkoSolar*, 761 F.3d at 251); *see also id.* at 13-14 ("Defendants' statements touting Qudian's cybersecurity and its efforts to protect consumer data left investors with the misleading impression that 'reasonably effective steps were being taken' to safeguard the data in Qudian's custody, when, in truth, the Company's cybersecurity had failed in the very recent past to prevent a substantial data breach." (quoting *JinkoSolar*, 761 F.3d at 251).  But the Court did not overlook or dispute that proposition in its Opinion and Order; it merely held that, when considered together and in context, Defendants' statements about its data security protocols *were not misleading*.  *See In re Qudian*, 2019 WL 4735376, at *8 (observing that while Qudian's offering materials contained statements touting the company's information security systems, "they *also* disclose[d] that the company's security systems were far from perfect, might not comply with applicable laws, and might have been breached in the past" and, on that basis, concluding that Plaintiffs had failed to "plausibly identify a material misrepresentation with respect to Qudian's statements concerning its data security protocols"); *see also id.* at *5 ("The touchstone of the inquiry is *not whether isolated statements within a document were true*, but whether defendants' representations or omissions, *considered together and in context*, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." (quoting *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004)) (emphases added)).  The mere fact that the Court did not cite *JinkoSolar* is of no moment.[1]

---

[1] The Court arguably did make an error in stating that the Registration Statement "showed that [Qudian] was under examination at the time of the IPO for potential violations of regulations." *In re Qudian*, 2019 WL 4735376, at *8.  Qudian merely disclosed that its subsidiary company had received a rectification notice; it did not affirmatively disclose that it was under investigation for the data security breach in early 2017.  *See* ECF No. 161-1, at 33; *see also* Pls.' Mem. 5.  But that does not materially affect the Court's analysis and conclusion.

Put differently, citing or discussing *JinkoSolar* would not have "alter[ed] the conclusion reached by the court." *Medisim*, 2012 WL 1450420, at *1 (internal quotation marks omitted). In *JinkoSolar*, the Second Circuit held that a manufacturer of solar cells and solar panel products made materially misleading misstatements and omissions when it touted its pollution compliance protocols but failed to disclose "ongoing, serious pollution problems" of which the company was plausibly aware at the time of the offering. 761 F.3d at 247. The statement read in pertinent part as follows:

> We have installed *pollution abatement equipment* at our facilities to process, reduce, treat, and where feasible, recycle the waste materials before disposal, and we treat the waste water, gaseous and liquid waste and other industrial waste produced during the manufacturing process before discharge. We also maintain environmental teams at each of our manufacturing facilities to monitor waste treatment *and ensure that these waste emissions comply* with People's Republic of China environmental standards. Our environmental teams *are on duty 24 hours*. *We are required to comply* with all PRC national and local environmental protection laws and regulations and our operations are subject to periodic inspection by national and local environmental protection authorities. PRC national and local environmental laws and regulations impose fees for the discharge of waste materials above prescribed levels, require the payment of fines for serious violations and provide that the relevant authorities may at their own discretion close or suspend the operation of any facility that fails to comply with orders requiring it to cease or remedy operations causing environmental damage. As of December 31, 2009, *no such penalties had been imposed on us*.

*Id*. at 247-48 (emphasis added). The Second Circuit found the company's statements materially misleading because of three critical facts. First, "the company described its compliance mechanisms in confident detail, including references to 24-hour monitoring teams, specific compliance equipment, and its clean compliance record." *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). As the Second Circuit later clarified, "tentative and generic" statements would not have produced a duty to disclose. *Id*. at 64; *see also Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 163 (S.D.N.Y. 2018) ("As other courts have noted, it is the specificity of the disclosures in *JinkoSolar* that makes them actionable . . . ." (citing cases)). Second, at the time

4

the registration statement became effective, the prophylactic environmental measures it described "were *then* failing." *JinkoSolar*, 761 F.3d at 251 (emphasis added). And third, the undisclosed ongoing violations were "serious" and "substantial." *Id*. They resulted in fines, payments to local landowners, and eventually led to a 40% drop in JinkoSolar's stock price. *Id*. at 249.

This case is easily distinguished from *JinkoSolar*. First, while JinkoSolar provided specific, confident assurances of compliance, Qudian's registration statement contained only "generic risk warnings." Pls.' Mem. 1. That is, JinkoSolar involved "specificity that is not present here." *Diehl*, 339 F. Supp. 3d at 163; *see also, e.g.*, *Luo v. SOGOU, Inc.*, No. 19-CV-0230 (LJL), 2020 WL 3051019, at *10 (S.D.N.Y. June 8, 2020) (dismissing claims where the registration statement at issue contained generic articulations of compliance); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 513-14 (S.D.N.Y. 2017) (dismissing claims where the description of compliance measures was generalized and "did not describe specific regions, specific initiatives, or make any assurances of efficacy"). Second, while the statements in *JinkoSolar* were not qualified, the statements here explicitly cautioned investors that the company's compliance measures were not perfect and that data security measures might well be found wanting. *See In re Qudian*, 2019 WL 4735376, at *8. Third, although Qudian did not explicitly disclose that it had experienced a data security breach in early 2017, there is no evidence that its security protocols were failing at the very time it issued its Registration Statement. *Cf. JinkoSolar*, 761 F.3d at 251 ("then failing").[2] And fourth, although news of the

---

[2]    Perhaps recognizing this shortcoming, Plaintiffs argue that "negative consequences of th[e] breach" were still being felt at the time of the IPO. Pls.' Mem. 3. But the only concrete allegation they make in that regard is to note that there was a criminal judgment "issued" by a Chinese court on August 17, 2017, sentencing one person for "illegally purchasing personal data

5

breach allegedly caused a 5.28% drop in Qudian's stock price, *see* Pls.' Mem. 3 n.3, that drop pales in comparison to the 40% drop in *JinkoSolar*, *see* 761 F.3d at 249.

In short, as the Court found in its Opinion and Order, considering Qudian's statements as a whole, it did not "fail[] to disclose then-ongoing and serious . . . violations" that "would cause a reasonable investor to make an overly optimistic assessment of the risk." *Id.* at 251.  To the contrary, any "reasonable investor who read the offering documents would have understood that [data security] remained an ongoing problem" for the company.  *Asay v. Pinduoduo Inc.*, No. 18-CV-7625 (PKC), 2020 WL 1530745, at *7-8 (S.D.N.Y. Mar. 30, 2020).  Accordingly, and for the reasons stated above, Plaintiffs' motion for reconsideration must be and is denied.  Per the Stipulation and Scheduling Order entered on October 18, 2019, the "Original" Defendants' answer and any responses to the operative complaint by the "New" Defendants shall be filed **within thirty days** of this Memorandum Opinion and Order.  *See* ECF No. 192.

The Clerk of Court is directed to terminate ECF No. 193.

SO ORDERED.

Dated: July 10, 2020
New York, New York

JESSE M. FURMAN
United States District Judge

---

of borrowers of online financing institutions, including Qudian."  SAC ¶ 117.  The operative complaint, however, alleges only in conclusory fashion that the data was traceable to the breach of Qudian in early 2017.  And even if the data could be traced to that breach, the sentencing in August 2017 of one person, with no alleged direct connection to Qudian, for illegally purchasing personal data of Qudian and other financing institutions would not render Qudian's October 2017 statements, viewed together and in context, false or misleading.