**Jack I. Zwick**
225 Broadway, Suite 1440
New York, NY 10007
Phone: (212) 385-1900 Fax: (212) 385-1911
Email: jack@zwickfirm.com

November 20, 2020                                                           **VIA ECF**

The Honorable Jesse M. Furman, U.S.D.J.
U.S. District Court for the
 Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

Re:     *In re Qudian Inc. Sec. Litig.*, Master File No. 1:17-CV-09741-JMF (S.D.N.Y.)

Dear Judge Furman:

Lead plaintiffs Alan B. Hertz and the Alan Hertz Family 2012 Trust (collectively, "Hertz Parties") and additional named plaintiff Darwin Sutanto (together with the Hertz Entities, the "Plaintiffs") respectfully submit this letter in opposition to the request by Panther Partners Inc. and The Morrow Property Trust ("State Plaintiffs"), plaintiffs in a consolidated action entitled *In re Qudian Securities Litigation*, pending in New York County Supreme Court under Index No. 651804/2018 ("State Actions"), to vacate and deny preliminary approval of the settlement reached by the parties to the instant action (the "Federal Action").

**I.     RELEVANT HISTORY OF THE FEDERAL ACTION**

**A.     The Initial Complaints And Contested Lead Plaintiff Appointment Process**

Beginning on December 12, 2017, four class action complaints were filed in this Court (the "Court").  On February 12, 2018, the Hertz Parties, having suffered collective losses of approximately sixteen ***million*** dollars on their purchases of Qudian ADS, moved to be appointed lead plaintiff pursuant to the PSLRA.  ECF Nos. 61, 63-64.  Other movants included Joel Fu, who lost approximately seventy-nine ***thousand*** dollars.  ECF Nos. 59-60, 62.  Mr. Fu was represented by State Plaintiffs' counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  Rather than withdraw his application to serve as lead plaintiff—even though the Hertz Parties had suffered losses approximately ***202 times*** greater than his own—Mr. Fu filed a reply brief falsely accusing Mr. Hertz of breaching his fiduciary duty to co-lead Plaintiff the Alan Hertz Family 2012 Trust.  ECF No. 75.  That false accusation failed.  Following a hearing before the Honorable Ronnie Abrams, the Court, by order dated March 16, 2018, consolidated the cases under lead case *In re Qudian Securities Litigation*; appointed the Hertz Parties as Lead Plaintiffs for the consolidated action; and approved Lead Plaintiffs' selection of Jack I. Zwick and Glancy Prongay & Murray LLP as Co-Lead Counsel.  ECF No. 80.

Among the four cases consolidated into this Action was *Foat v. Qudian Inc., et al.*, Case 1:17-cv-09875-JMF (filed Dec. 18, 2017), which alleged, among other things, that the registration statement failed to disclose "that the Company's largest sales platform and strategic partner, Alipay and Ant Financial, could unilaterally cap the APR for loans provided by Qudian."  Ex. 1 hereto at ¶ 35.   Thus, the so-called "Ant Financial Claim" was alleged very

Honorable Jesse M. Furman
January 20, 2020
Page 2

early in this Action, and Co-Lead Counsel were well aware of it at the time they filed the amended complaints. Notably, Robbins Geller was one of the counsel for plaintiff Foat.

### B. The Amended Complaints

Following an extensive investigation that included retention of a private investigation firm that conducted an investigation in the People's Republic of China, on May 18, 2018, Plaintiffs filed and served their 45-page Consolidated Amended Class Action Complaint (the "CAC") asserting claims against various Defendants under Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act"). ECF No. 109. Specifically, the CAC alleged that Defendants made false and misleading statements and omissions in the Registration Statement concerning Qudian's micro-lending business relating to illegal loans to students, illegal debt collection practices, illegal interest rates, and an undisclosed data breach.

On July 27, 2018, after Plaintiffs negotiated the stipulation for leave to file an amended complaint (ECF No. 133), Plaintiffs filed and served the 52-page Second Amended Consolidated Class Action Complaint (the "SAC"). ECF No. 134. The SAC, like the CAC, asserted the same claims concerning Qudian's micro-lending business against various Defendants under Sections 11, 12 and 15 of the Securities Act, but also included allegations of false and misleading statements and omissions concerning Qudian's Dabai Auto business.

In the SAC, Plaintiffs did not assert the Ant Financial Claim as framed in *Foat* or in the State Actions (*i.e..,* that the Registration Statement provided insufficient warning of the risk that Ant Financial would unilaterally cap Qudian's interest rates). Rather, the SAC alleged that Alipay's imposition of a 24% rate cap was a *consequence* of Qudian's charging illegally high interest rates and illegal debt collection practices, as AliPay itself stressed in announcing the rate cap. ECF No. 134 at ¶¶ 7, 106-109. Indeed, as stated in paragraph 109 of the SAC, "[a]ccording to a November 24, 2017 Bloomberg News story, Alipay said in a statement that it was imposing the cap *as a result of its recent discovery of abuse by lenders in charging excessive rates* and employing inappropriate methods of debt collection, as alleged herein." (Emphasis added.)

### C. The Motion to Dismiss

On September 27, 2019, the Court decided Defendants' motion to dismiss. In its ruling, the Court acknowledged the Alipay allegations in the SAC, but nevertheless dismissed the claim concerning illegal interest rates, which Plaintiffs alleged caused Alipay to impose the interest rate cap. *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *3, *7 (S.D.N.Y. Sept. 27, 2019). The Court did, however, find the Dabai Auto claim sufficiently plead, although it stated that the question of whether Qudian's omission is actionable was "a close one." *Id*. at *9.

## II.    THE SETTLEMENT IS FAIR AND REASONABLE

The State Plaintiffs assert that the proposed settlement is unreasonable because Plaintiffs are releasing the ostensibly more valuable Ant Financial Claim in exchange for insufficient consideration. This argument is simply wrong.

First, it is axiomatic that Plaintiffs had the sole authority to determine what claims to assert in the Federal Action on behalf of the Class, and their decision not to assert the Ant Financial Claim as a stand-alone claim, in view of the Registration Statement's risk disclosures concerning the Alipay relationship, was well within their discretion. *See In re Facebook, Inc.,*

Honorable Jesse M. Furman
January 20, 2020
Page 3

*IPO Sec. & Deriv. Litig.*, 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) ("courts in this Circuit have consistently held that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class."); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. April 9, 2010) ("in a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class."). Indeed, a contrary holding "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004).

Second, the scope of the release—to be given only by Plaintiffs and the other Class Members who choose to remain in the class and participate in the Settlement's significant financial benefits—is both typical and appropriate. Consistent with Second Circuit case law, the Settlement releases, *inter alia*, claims that are related to those asserted in the Federal Action, even if such claims had not been explicitly asserted in the Action, as long as those claims relate to the facts forming the basis for the allegations made in the Action. *See* Stipulation and Agreement of Settlement ("Settlement Agreement"), ECF No. 227-1 at ¶1(ii); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("class action releases may include claims not presented [in the complaint] . . . so long as the released conduct arises out of the 'identical factual predicate' as the settled conduct"); *In re Adelphia Communications Corp. Secs. & Deriv. Litig.*, 272 Fed. Appx. 9, 13 (2d Cir. 2008) (affirming settlement approval where "the investment losses suffered by all class members share[d] a common factual predicate" and citing holding in *Wal-Mart* that court may release claims "'which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in complaint.'").

Thus, any claims that arise from the same factual allegations made in this Action, even if based on different legal theories than the asserted claims, would appropriately be released by this Settlement. Given that the SAC alleged that the Alipay announcement was a ***consequence*** of Qudian's undisclosed illegal behavior, causing part of the November 24, 2017 stock price drop, and that the allegations related thereto were acknowledged by the Court in its motion to dismiss decision, it is beyond question that State Plaintiffs' claim stems from a common nucleus of operative facts with the pleadings in this case. *See Wal-Mart*, 396 F.3d at 107, n.13 (explaining well-established standard that "'a court may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint'") (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981)).

Third, if the State Plaintiffs truly believe they could recover more pursuing their "more valuable claim," they can, as the Notice clearly informs all class members, simply exclude themselves from the Settlement and continue to prosecute their own individual actions. Their personal choice is no reason to reject the Settlement. *See In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("As Plaintiffs point out, [Objector] Hayes could have pursued an individual '34 Act claim against Facebook. He chose not to."); *In re Bank of Am.*, 2010 WL 1438980, at *3 ("Finally, the plaintiffs in *Iron Workers*, *Dornfest*, and *Ciullo* are free to pursue their claims as individual cases-but not as class actions.").

Finally, contrary to the State Plaintiffs' assertions that the stand-alone Ant Financial Claim is more valuable than those pursued in this action, the value of the stand-alone Ant

Honorable Jesse M. Furman
January 20, 2020
Page 4

Financial Claim may turn out to be zero, and the State Court Actions have been stayed since their inception.  Under such circumstances, it is certainly reasonable for Plaintiffs and the other "Class Members to take the bird in the hand instead of the prospective flock in the bush." *In re BGI, Inc.*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012).

## III.    THE PROPOSED NOTICE IS ADEQUATE

Citing a series of out-of-circuit cases, the State Plaintiffs' claim that: (1) "the notice of settlement is misleading because it fails to describe the claim alleged in the state action and provides an incomplete description of the state appeal"; and (2) "[m]erely reciting the terms of the release, as the notice does here, is … insufficient under these circumstances."  The State Plaintiffs are wrong.

Rule 23(e) and due process together require that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.  The Second Circuit has found the reasonableness standard is met where "the settlement notice quoted verbatim the Settlement's release" (*Id*. at 115) and, where there is similar pending litigation, it has "strongly encourage[d]" that "class notices … include specific reference to pending actions." *Id*. at 116 n. 22.

Here, the proposed notice set forth the releases verbatim, expressly identifies the State Actions, describes the status of those actions (*i.e.*, that they are stayed, and the stay is currently being appealed), explains how to object and request exclusion, and informs Class Members that "you may not participate in both this settlement and the State Court Actions," and "absent a valid exclusion request, approval of the Settlement in this Action will eliminate the ability of any member of the Class to assert Released Plaintiffs' Claims in the State Court Actions or in any other court or forum."  ECF No. 227-1 at p. 9, 11-14, 21-24.  Under controlling Second Circuit Case law, nothing more – including the considerable level of detail sought by the State Plaintiffs -- is required. *See Wal-Mart*, 396 F.3d at 114-16 (rejecting substantially similar attack on notice where "settlement notice quoted verbatim the Settlement's release"); *see also Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 611 (W.D.N.Y. 2011) (rejecting request by counsel in other actions with similar claims to, *inter alia*, include the names and contact information for counsel in those cases, set forth their objections to the settlement in the notice and stating that "[s]o long as the notice clearly explains to class members what effect their participation in the settlement would have on them, what their options are, and of their right to raise objections at a later date, further information about others' opposition to the settlement would probably do little more than confuse the recipients of the notice.").

## IV.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

The State Plaintiffs also object to the plan of allocation.  However, as set forth in the Settlement Agreement, the proposed plan of allocation is to be considered independent of the settlement, and the settlement is not contingent on any particular plan of allocation being approved. ECF No. 227-1 at ¶16.  Thus, even assuming the State Plaintiffs' objection to the plan has merit—it doesn't—it will not affect the validity of the settlement and should not result in a denial of preliminary approval.  The Court should, instead, consider the proposed plan once all class members have had the opportunity to review it and weigh in. *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *4 (S.D.N.Y. July 15, 2014) ("Class

Honorable Jesse M. Furman
January 20, 2020
Page 5

members will have an opportunity to object to any proposed plan of allocation for this pool before it is fixed, and like the entire allocation plan, this Court may modify the proposal."). Simply put, State Plaintiffs "objections are better raised at the final approval hearing rather than at this preliminary stage." *Id.* at *8.

In any event, State Plaintiffs' objections are without merit. State Plaintiffs' primary objection to the proposed plan is that it does not attribute damages to the Ant Financial claim separately from any other cause of the drop that day. However, as explained above, the Court dismissed the version of the Ant Financial Claim that was pled, Lead Counsel valued it accordingly in litigating and mediating the case, and the plan of allocation reflects that valuation. Conversely, even though the data breach claim was likewise dismissed, Lead Counsel believed that this was a very strong claim, moved for reconsideration concerning it, and, if the litigation had proceeded, would have sought appellate review. Such was not the case with the other risk disclosure claims.[1] Having thoroughly litigated both claims, Lead Counsel's opinions are entitled to deference. *See In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (approving allocation plan and according counsel's opinion "considerable weight" because there were "detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery"). In addition, the proposed plan is consistent with Lead Counsel's litigation strategy in pleading and defending the claims (as evidenced by their motion for reconsideration), and the amount allocated to the data breach claim is rationally tied to the probability of success on appeal. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.").

State Plaintiffs also attack the four-day price decline formula in the plan of allocation attributed to the data breach (November 20, 21, 22 and 24, 2017),[2] claiming, *inter alia*, that the November 24 decline was not actually related to the data breach claim and that it should be given a larger dollar value. However, Plaintiffs, via thorough analysis, concluded that the November 20 and 21 drops were in reaction to local media and then international media reporting on the data breach, that the deflation continued through November 22, as is not uncommon with Chinese companies, and that $1.39 of the $3.84 November 24 drop was related to news of the Chinese authorities probing the data leak, which had not been disclosed earlier. Accordingly, the Court should deny the State Plaintiffs' motion to vacate and deny preliminary approval of the proposed settlement.

---

[1] Courts have repeatedly approved plans that allocate settlement proceeds based on the perceived strengths and weakness of different claims. *See In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *7 (S.D.N.Y. Nov. 12, 2004) (approving plan of allocation that distributed settlement fund based on relative strength of various Securities Act claims); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("A reasonable plan may consider the relative strength and values of different categories of claims.").

[2] November 23, 2017 was Thanksgiving and the market was closed.

Honorable Jesse M. Furman
January 20, 2020
Page 6


Respectfully submitted,

*s/ Jack I. Zwick*
Jack I. Zwick


cc:      All Counsel of Record via ECF


Substantially for the reasons set forth in Plaintiffs' and Defendants' letter responses, ECF Nos. 232, 233, State Plaintiffs' letter motion to vacate preliminary approval of the settlement, ECF No. 230, is DENIED.  In essence, State Plaintiffs' request for vacatur of preliminary approval is a premature objection, and "[t]he proper time for the Court to consider objections to a settlement is at the final approval hearing."  *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013); *see id.* (collecting cases).  While notice of the effect of the settlement with regard to the state action could be more detailed, it is nevertheless adequate under the reasonableness standard set forth in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-15 & n.22 (2d Cir. 2005).  The Clerk of Court is directed to terminate ECF No. 230.

SO ORDERED.

November 23, 2020